UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 1:19-cv-23171-KMW

SILVERBOYS, LLC,

      Plaintiff,

v.

SOFIA JOELSSON, et al.

      Defendants.

------------------------------------/

**PLAINTIFF'S RESPONSE TO STATEMENT OF MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT FOR BON VIVANT CUSTOM WOODWORKING, INC.**

Plaintiff Silverboys, LLC ("Silverboys"), by its undersigned counsel, pursuant to Local Rule 56.1, responds to the Statement of Material Facts in Support of Motion for Summary Judgment for Bon Vivant Woodworking, Inc. (Dkt. 229), at follows.

    **1.**    **Bon Vivant is not in privity with the Plaintiff or any of its members.**

<u>Response</u>:  Admitted.

    **2. The only communications between Bon Vivant and Plaintiff, were a few telephone conversations with Plaintiff's member, Karen Silverman, regarding an unpaid balance owed to Bon Vivant, and Bon Vivant possibly continuing work after Plaintiff's disputes with the Sojo defendants ("SOJO") had already begun.**

<u>Response</u>:  Denied as stated.  Plaintiff admits that Bon Vivant and Plaintiff had telephone conversations and correspondence, but there are additional communications that Defendant is omitting.  Bon Vivant representative Carlos Roman was the project manager for the Silverman project and met with Karen Silverman on more than one occasion during the pendency of the project.  (Ex. 1, Rammos Tr. 33:3-11).

1

3. **During the entirety of Bon Vivant's work for the project, it was unaware of the amount of money that Plaintiff paid to SOJO, or otherwise, for Bon Vivant's products; as payment of Bon Vivant's invoices was solely SOJO's responsibility, and Bon Vivant was not involved with any contracts or financial arrangements that were made between Plaintiff, SOJO, relative to what SOJO charged Plaintiff for Bon Vivant's products.**

Response:  Denied as stated.  Bon Vivant was aware that it was industry practice for a designer to charge a standard markup on millwork.  (Ex. 1, Rammos Tr. 103:2-18).  In addition, on at least one occasion, Joelsson asked Bon Vivant to increase the price of an invoice to SOJO.  (Ex. 2, Juan Carlos Pombo Aff. ¶ 55).

4. **Max Caggiano, Plaintiff's former accountant and/or bookkeeper, never told Plaintiff that Bon Vivant was involved in any 'kickback scheme' regarding the project, because Bon Vivant was not involved in any such arrangement or 'scheme'.**

Response:  Denied as stated.  Plaintiff admits that Max Caggiano did not tell Plaintiff that Bon Vivant was involved in a 'kickback scheme,' because he did not know Bon Vivant.  Plaintiff denies the statement that Bon Vivant was not involved in any such arrangement or 'scheme.'  (Ex. 2, Pombo Aff. ¶ 39, 55, 67)

5. **SOJO was charged the amount that Bon Vivant charges to any customer in the normal course of business, based on the product and material specifications and requirements provided by SOJO.**

Response:  Denied.  Bon Vivant charged excessive prices to SOJO, which were further marked up and then passed along to Plaintiff.  According to its own internal documents, Bon Vivant made over 600% of its optimal price on at least one item and had a profit margin of nearly 40% on the job, which doubled Bon Vivant's target profit margin.  (Ex. 3, BV 00016; Ex. 1, Rammos Tr. 90:2-12).

6. **During Bon Vivant's work on the project, all quotes and invoices prepared for the products and materials that Bon Vivant provided on the project, were submitted to SOJO not Silverboys.**

Response:  Admitted.

**7. During Bon Vivant's work on the project, all payments received by Bon Vivant, for the products and materials that Bon Vivant provided on the project, were received from SOJO.**

Response:  Admitted.

**8. When Bon Vivant receives additional or revised information regarding a quoted product or material, the quote is typically revised to account for the new information.**

Response:  Admitted.  Plaintiff notes, however, that Bon Vivant also made price changes without any additional or revised information, simply based on requests from Joelsson to increase prices.  (Ex. 2, Pombo Aff. ¶ 55).

**9. Bon Vivant was not aware of any alleged fraud taking place between SOJO and Plaintiff, during the time of Bon Vivant's work on the project.**

Response:  Denied.  Bon Vivant was aware of and abetted SOJO's fraud.  *See* Responses to ¶¶ 3 and 5.

**10. Bon Vivant never gave SOJO duplicate invoices for different amounts for the same products/materials on the project, with the exception of one reduced amount to save on import duties into the Bahamas.**

Response:  Denied.  Bon Vivant issued duplicate invoices for installation of cabinetry and furniture (Ex. 3, BV 00156).

**11. On May 19, 2021, Plaintiff's expert, Patrick Scutero, testified that he had no evidence of any wrongdoing committed by Bon Vivant and did not have any opinions as to whether Bon Vivant knew of alleged fraud or breach of fiduciary duty between SOJO and Plaintiff.**

Response:  Admitted.  Plaintiff notes, however, that it does not follow that there is no such evidence, and further notes that the issue is outside the scope of Mr. Scutero's expert report.

3

### ADDITIONAL FACTS MATERIAL RELEVANT TO MOTION

12.     Bon Vivant was not told it needed to bid competitively against any other company for the millwork for the Silverboys project.  (Ex. 1, Rammos Tr. 100:19-22).

13.     Joelsson told Bon Vivant to raise prices to SOJO.  (Ex. 2, Pombo Aff. ¶ 55).

14.     That testimony is consistent with testimony that former SOJO designer Mara Schwartz gave in connection with another vendor, Total Window.[1]

15.     Bon Vivant, at SOJO's directive, significantly overcharged for its goods, as shown by Bon Vivant's own internal documentation.  (Ex. 3, BV 00016).  Bon Vivant's Job Costing Worksheet tracked all the goods sold to SOJO for the Silverboys project and listed out Bon Vivant's "optimum sales price"[2] and profit margin for each product.  (*Id.*).  Overall, the worksheet showed that Bon Vivant earned a 40% profit margin, including an 88% profit margin on the "Play Room Daybed," which was 601% of the "optimum sales price."  (*Id.*).

16.     Consistent with SOJO's practice of having vendors inflate prices, the worksheet shows that 19 items exceeded Bon Vivant's optimum sales prices, some by more than double or triple.  (*Id.*)  By Bon Vivant's own calculations, it earned $65,000 above its optimum sales price.  (*Id.*).

17.     And because Bon Vivant made custom goods, SOJO profited 30 cents for every dollar Bon Vivant charged.  (Dkt. 211-3, at 5).

18.     In addition to the overcharging, Bon Vivant provided SOJO with fraudulent charges of $54,500 for millwork installation and $19,200 charge for crating.  The installation and crating

---

[1]  *See* Schwartz Tr. 237:8-18, which is annexed as Exhibit 6 to the papers submitted in opposition to Defendant Total Window, Inc.'s parallel motion for summary judgment.

[2]  The "optimum sales price" was the price Bon Vivant would need to charge to earn a 20% profit on the item (i.e., the optimal profit margin).  (Ex. 1, Rick Rammos Tr. 96:7-22) ("Well, what should we have charged in order to make 20 percent?  And that's what the optimum sales price is.").

prices were already included in the originally contracted price and should not have been billed separately.  (Ex. 2, Pombo Aff. ¶ 39).

19.    Bon Vivant produced a contract with SOJO dated July 29, 2015.  The signatories to the contract, however, signed on July 15, 2015 and August 30, 2015.  (Ex. 4, BV 00277-80).  Bon Vivant could not explain the discrepancy.  (Ex. 1, Rammos Tr. 67:3-6).

20.    Bon Vivant's Job Labor Cost Report shows a price for the front door of $31,976 (Ex. 5, BV 00004), which is inconsistent with the Bon Vivant invoice for the door in the amount of $37,250.  (Dkt 213-1 at page 215).

21.    Bon Vivant's accounting records (Ex. 6, BV 00156) do not reflect a $27,250 payment on October 5, 2015 from SOJO that appears in SOJO's bank records (Ex. 7, SOJO KZ 086934).


Date: August 13, 2021

Respectfully submitted:

By:   /s/ *Jonathan Z. DeSantis*

**WALDEN MACHT & HARAN LLP**

Milton L. Williams (pro hac vice)
mwilliams@wmhlaw.com
Jonathan Z. DeSantis (FBN 112446)
 jdesantis@wmhlaw.com
250 Vesey Street, 27th Floor
New York, NY 10281
Tel: (212) 335-2030

*Attorneys for Plaintiff*

5

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a true and correct copy of the foregoing has been electronically filed with the Clerk of Court using the CM/ECF on August 13, 2021, which will provide an electronic copy to all counsel of record.

By: _/s/ *Jonathan Z. DeSantis*_____
Jonathan Z. DeSantis