UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

SILVERBOYS, LLC,                                    CIVIL ACTION NO.: 19-cv-23171-KMW

     Plaintiff,

v.

SOFIA JOELSSON, SOJO DESIGN, LLC,
CHAYANNE XAVIER COE, CUDESSO, LLC,
SOFIA JOELSSON DESIGN, LLC, JOELSSON
JOELSSON ENTERPRISE MANAGERS, LLC,
SOFIA JOELSSON ENTERPRISES, LLC,
LIMITED EDITION, LLC, SOJO LIVING LLC,
LIMITED EDITION CURATION, LLC, DESIGN OPS, INC.,
SPA RICCI, LLC, 4TEEN7TY LLC, TOTAL WINDOWS, INC.,
BON VIVANT CUSTOM WOODWORKING, INC.,
FINE SURFACES AND MORE, INC., AND VISSER CLOSETS, INC.

     Defendants.
_____/

**DEFENDANT BON VIVANT CUSTOM WOODWORKING, INC.'S
REPLY MEMORANDUM IN SUPPORT OF NOTICE OF JOINDER WITH
TOTAL WINDOW, INC.'S MOTION FOR SUMMARY JUDGMENT
AND INCORPORATED MEMORANDUM OF LAW [D.E. 228]**

     Defendant, BON VIVANT CUSTOM WOODWORKING, INC. ("Bon Vivant"), by and through its undersigned counsel, pursuant to Local Rule 7.1(c) files this Reply Memorandum in support of its Joinder with Defendant, TOTAL WINDOWS, INC.'S ("Total Windows") Motion for Summary Judgment ("TW MSJ") [D.E. 228] and states as follows:

     1.     First, all references by Plaintiff, to an alleged lack of Bon Vivant 'bidding competitively against other window treatment vendors', is factually irrelevant to Bon Vivant's scope of work on the project, and irrelevant to the legal issues raised by Bon Vivant's Joinder, as it pertains to the entitlement to summary judgment.

2. Similarly, Plaintiff's reliance on the affidavit allegations of SOJO's project manager, Juan-Carlos Pombo, is both factually and legally irrelevant to the issues presented in Bon Vivant's Joinder. Simply, as thoroughly detailed in Bon Vivant's Joinder, irrespective of what SOJO, Joelsson, or anyone else "told" Bon Vivant to charge for its work on the Project, the un-refuted evidence in Bon Vivant's Joinder establishes, without any reasonable doubt, that even if said allegation were true, *arguendo*, Bon Vivant did not actually follow any such instruction, at by SOJO, Joelsson, or otherwise, and did not charge any inflated prices above its customary rates.

3. Next, Plaintiff's reliance on testimony from Mara Schwartz is also irrelevant to the issues raised by Bon Vivant's Joinder. In addition to Plaintiff's self-serving, unilateral determination of what it deems to be 'consistent' with other testimony of an unrelated co-defendant (Total Windows) being irrelevant to the issues of Bon Vivant's Joinder, it does not amount to summary judgment evidence of any testimony between Ms. Scwartz and Bon Vivant, or summary judgment evidence that would otherwise be dispositive of the issues contained in Bon Vivant's Joinder.

4. Next, Plaintiff's Opposition Exhibit 3 fails as summary judgment evidence. As detailed clearly by the very testimony Plaintiff elicited from Bon Vivant's corporate representative, Plaintiff cannot establish the reliability or authenticity of said document or its contents; information which Plaintiff has failed to disclose in its Opposition, *to wit*:

> Q. It looks like it's titled "Job Costing Worksheet." The Bates stamp is BV 00016 . . . Oh, I do see a date. It's June 2nd, 2016. Is that what you call this document, a job costing worksheet?
>
> A: . . . This looks like a summary of job costs for the whole job. It's not a typical form that we – that we have, but it does look like one of our forms.
>
> . . .

> Q: Do you know who created this document?
>
> A: No.
>
> Q: So I missed if you answered the question Mr. Rammos. Did you say you don't know who created it?
>
> A: I don't know who created the document.
>
> Q: Okay. And you said that this . . . is not a normal document that you create . . . in ordinary business?
>
> A: What we had been doing more recently, in the last three, four years, is probably a little different that what we were doing then . . . So I look at this, at this, and in my mind, it's in serious doubt as to the accuracy of the numbers.
>
> . . .
>
> Q: And then . . . the "Profit" column represents the difference between sales price and total cost?
>
> A: Yeah . . . that's what it is there. And it says, what, 38 percent? Highly unlikely. It's probably inaccurate.
>
> Q: And what makes you think it's inaccurate?
>
> A: Because most of the job cost data from that era was inaccurate because it was very difficult to get compliance . . . it's all based on employees properly imputing information into the system, which is a constant source of difficultly . . . So I don't – I see what the data says. I don't have much confidence in its accuracy, especially from that – from that time . . . I would say I'd have 50 percent confidence in that number . . .
>
> *See* Bon Vivant SOF, at Ex. C, 91:20 – 95:2.

5.  "Authentication is necessary to establish that 'the matter in question is what its proponent claims.' . . . A trial court must evaluate each piece of evidence on its own merits since there is no specific list of authentication requirements." *Daniels v. State*, 634 So.2d 187, 193 (Fla. 3rd DCA 1994) (internal citations omitted). *See also United States v. Middlebrooks*, 431 F.2d 299, 302 (5th Cir. 1970) ("An examination of what appellant described as refund ledger

3

revealed that checks were issued in many instances without any notation as to what they represented, and many of the entries merely reflected credit exchanges rather than refunds. A characterization of this hodgepodge of unauthenticated records as a 'refund ledger' was a self-serving characterization with no basis in fact. . . . In the case at bar, the defendant offered no live testimony by witnesses who . . . received refunds . . . The trial judge properly exercised his discretion in excluding appellant's proffer of unauthenticated, miscellaneous records that appellant called a 'refund ledger'.") (internal citations omitted).

6. Stated otherwise, despite knowing that it had not authenticated the source of the document, and despite the only record testimony indicated the likely unreliability and inaccuracy of the contents of Exhibit 3, Plaintiff still attempts to offer same to the Court now as summary judgment evidence in opposition, without having taken any action to correct this basic evidentiary defect. *See* P's Opp. at p. 2 & Ex. 3.

7. Similarly, Plaintiff's lack of summary judgment evidence extends to Exhibits 4 and 5 of its Opposition, *to wit*:

> i. Exhibit 4 – despite Plaintiff knowing who the signatories appear to be to the alleged contract, it made no effort to depose or otherwise obtain testimony or record evidence to address the very "discrepancy" upon which it attempts to now rely. Therefore, even if there were a legal or factual issue to be raised in response to an alleged "discrepancy", Plaintiff has not done so in any way that creates ***summary judgment evidence*** in opposition to Bon Vivant's Joinder; and
>
> ii. Exhibit 5 – Bon Vivant's corporate representative has previously testified as to the correct number, and the basis for Plaintiff's alleged 'inconsistency' example; summarized, with citation, as 'the amount changed because the specifications changed and the job grew in scope, and an inconsistency between documents was likely due to human clerical error in picking up one form versus another'. *See* Bon Vivant SOF, at Ex. C, 71:6 – 75:21.

8. Finally, Exhibit 6 of Plaintiff's Opposition suffers from one of the same defects as Exhibit 3, in that the record testimony Plaintiff has elicited from Bon Vivant's corporate representative, shows Plaintiff cannot establish the reliability of the content of the Bon Vivant document, to wit:

> Q: This is Bates stamped PV (sic) 0156 . . . is this the most recent version?
>
> A: Yes.
>
> . . .
>
> Q: . . . Is this an accurate representation of the invoicing and payments related to the Silverman project, to the best of your knowledge?
>
> A: Yes.
>
> . . .
>
> Q: ***Have you personally checked the accuracy of this document?***
>
> A: ***No.***
>
> Q: ***So how do you know it's accurate?***
>
> A: ***Because history tells me it's accurate.***
>
> Q: Can you explain that?
>
> A: These financial sheets are taken very seriously by me. I make sure they're updated regularly . . . ***Now, does that mean I've checked every single number on this sheet and every date? No.***
>
> *See* Bon Vivant SOF, at Ex. C, 76:23 – 78:15.

9. Therefore, understandably omitted from Plaintiff's Opposition, is the fact that the existing testimony and record evidence shows that Plaintiff's relied-upon exhibits either only support Bon Vivant's arguments in support of its Joinder, and/or shows that Plaintiff has not authenticated said exhibits as ***admissible summary judgment evidence*** in opposition thereto.

5

10. Next, Plaintiff supplements its lack of evidentiary basis, by adding a superfluous argument about the same unauthenticated accounting records from Bon Vivant not showing a payment that Plaintiff alleges appears in SOJO's bank records. *See* P's Opp. at p. 3, Ex. 6.

11. Simply, without having first authenticated the accounting or other financial records of Bon Vivant, everything that Plaintiff then stacks on top of those inadmissible documents, fails as summary judgment evidence in opposition to Bon Vivant's Joinder.

12. Next, Plaintiff's first argument on its perceived procedural status of a Memorandum of Law is both legally inaccurate, and disingenuous. *See* P's Opp. at p. 3.

13. First, Plaintiff's cited authority regarding a memorandum of law, does not in any way stand for the position apparently offered by Plaintiff. *See Segal v. Rickey's Rest. & Lounge, Inc.*, 11-61766-CIV, 2012 WL 2393769, at *8 (S.D. Fla. June 25, 2012).

14. Specifically, the *Segal* precedent, as accurately presented, simply stated:

> "Plaintiff moves to strike Defendant's summary judgment motion for a violation of the rules on page limits. Plaintiff states that Defendant ***improperly inserted arguments in its statement of facts***, ***thereby essentially extending the number of pages for legal arguments outside of its memorandum document***. ***The Court agrees with Plaintiff that Defendant improperly made legal argument in its statement of facts. Therefore, the Court will only consider legal arguments raised in the memorandum.*** The Court will not, however, strike Defendant's entire motion on this basis." *Id.* (emphasis added).

15. Clearly, *Segal* discusses only the issue of improperly asserting legal argument into a statement of facts, relative to a memorandum of law; nowhere does the precedent support, or even discuss, the reliance upon a previously filed memorandum of law, via Joinder, in order to expedite and simplify the Court's review and analysis of legal issues.

16. Having addressed the legal inaccuracy of Plaintiff's precedent, the disingenuousness of same then takes two distinct forms.

6

17. First, Plaintiff alleges that Bon Vivant has not submitted any Memorandum of Law is support of its Joinder; however, this is facially misleading, by the very nature of a Joinder, which is an axiomatic procedural vehicle for the presentation of legal argument, for which Plaintiff fails to offer any authority to suggest otherwise. *See generally Acciard v. Whitney*, 2011 WL 13294621, at *2 & FN 2 (M.D. Fla. Apr. 13, 2011) (Summary judgment notices of joinder are appropriate for consideration where supported by specific facts applicable to joining party, evidence submitted to support entry of summary judgment joining party's their favor, and identification of undisputed material facts which would support entry of summary judgment in joining party's favor).

18. The next aspect of Plaintiff's red herring in this regard, involves its representation and unilateral characterization that, "[I]t is unclear what Bon Vivant's generic 'joinder', without further specification, means." *See* P's Opp. at p. 3.

19. What is most brazen about this misrepresentation, is that it is facially apparent throughout Bon Vivant's Joinder, what aspects of Total Window's Motion for Summary Judgment are being adopted, with specific page citations to same in the Joinder itself, and then how the cited precedent is applied to Bon Vivant's unique facts and evidence.

20. However, notwithstanding that Plaintiff was able to clearly review and analyze same prior to preparing its Opposition, by way of having crafted its counter-arguments, it paradoxically chose to also take the incongruent position that it couldn't understand how a specifically cited Joinder in previously-filed legal memoranda operated.

21. Simply, Bon Vivant's procedural vehicle is a legal memorandum, by way of adoption and joinder in the memorandum previously filed by Total Windows; and, rather than burden the Court with a verbatim recitation of the same citation to legal precedent previously

7

provided by another party, Bon Vivant has attempted to simplify the Court's review via an axiomatic procedural vehicle, for which no valid oppositional authority has be offered by Plaintiff; and Plaintiff's feigned misunderstanding is meritless.

**I.   THERE ARE NO ISSUES OF MATERIAL FACT WHICH BAR SUMMARY JUDGMENT IN BON VIVANT'S FAVOR ON SILVERBOY'S CLAIM FOR AIDING AND ABETTING SOJO'S ALLEGED FRAUD.**

22.   Plaintiff's series of recitations in this regard are principally addressed by the same lack of summary judgment evidence that has previously been discussed herein.

23.   First, the entirety of Plaintiff's conclusory statements on Page 4 of its Opposition, lack any citation to summary judgment evidence, rendering the entirety of same essentially just more unsupported pleading allegations, which cannot survive the standard for granting Bon Vivant summary judgment.

24.   Again, specifically, Plaintiff has predicated nearly the entirety of said arguments, on non-authenticated documents, which were established as so prior to Plaintiff filing its Opposition; however, in the absence of having summary judgment evidence to offer, Plaintiff has elected to overlook the authentication aspect of evidence, and offer its exhibits as purported summary judgment evidence, in an apparent attempt to have the Court overlook same. Accordingly, Plaintiff's arguments under this section of its Opposition are most efficiently resolved simply by resort to the fundamental rules of evidence on summary judgment.

**II.   THERE ARE NO ISSUES OF MATERIAL FACT WHICH BAR SUMMARY JUDGMENT IN BON VIVANT'S FAVOR ON SILVERBOY'S CLAIM FOR AIDING AND ABETTING SOJO'S ALLEGED BREACH OF FIDUCIARY DUTY.**

25.   Again, Plaintiff's recitation of claims in this portion of its Opposition is just that. *See* P's Opp. at pp. 5-6.

26. Specifically, this section of its Opposition lacks a single citation to any summary judgment evidence, or legal authority, which would suggest any issue of fact, let alone a material one, in response to the summary judgment evidence provided in Bon Vivant's Joinder.

27. Accordingly, absent actual summary judgment evidence, Plaintiff's entire recitation of opposition is actually best suited for pleading allegations; but, in any event, falls far short of satisfying its burden on summary judgment.

**II.  THERE ARE NO ISSUES OF MATERIAL FACT WHICH BAR SUMMARY JUDGMENT IN BON VIVANT'S FAVOR ON SILVERBOY'S CLAIM FOR VIOLATION OF FDUTPA**

28. Finally, just as the lack of summary judgment evidence plagues the rest of Plaintiff's Opposition, it rears its head on Plaintiff's final argument.

29. Notably, Plaintiff itself relies on the same set of unsupported factual premises, then proceeds with the same pattern of unilaterally declaring that multiple factual and/or legal issues or conditions exist, without having provided any actual summary judgment evidence in support of same. *See* P's Opp. at p. 7.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing instrument has been electronically filed with the Clerk of Court using CM/ECF on August 20, 2021, and a copy of same will be served by the E-Filing Portal via E-mail upon counsel or parties registered on the CM/ECF system.

    Kubicki Draper
*Counsel for Bon Vivant Custom Woodworking, Inc.*
13350 Metro Parkway, Suite 401
Fort Myers, FL 33966
(239) 334-8403
E-Service: MMK-KD@kubickidraper.com

By: */s/ Michael A. Valverde*
    MICHELLE M. KRONE
    Florida Bar No.: 0189073
    MICHAEL A. VALVERDE
    Florida Bar No.: 0091239